IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF ILLINOIS, EASTERN DIVISION

| | | |
|---|---|---|
| JUAN NEELY, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 12 C 2231 |
| | ) | |
| MICHAEL P. RANDLE, FORMER DIRECTOR | ) | |
| OF THE ILLINOIS DEPARTMENT OF | ) | |
| CORRECTIONS; GLADYSE C. TAYLOR, | ) | |
| ACTING DIRECTOR OF THE ILLINOIS | ) | |
| DEPARTMENT OF CORRECTIONS; ROBERTA | ) | JUDGE MATTHEW KENNELLY |
| M. FEWS, DEPUTY DIRECTOR, | ) | |
| ILLINOIS DEPARTMENT OF CORRECTIONS | ) | |
| OFFICE OF PROGRAMS AND SUPPORT | ) | |
| SERVICES; MARCUS HARDY, WARDEN OF | ) | |
| STATEVILLE CORRECTIONAL CENTER; | ) | |
| ANTHONY RAMOS, FORMER WARDEN OF | ) | |
| STATEVILLE CORRECTIONAL CENTER NRC; | ) | |
| DONALD GAETZ, WARDEN OF | ) | |
| PINCKNEYVILLE CORRECTIONAL CENTER; | ) | |
| RANDY DAVIS, FORMER WARDEN OF | ) | |
| PINCKNEYVILLE CORRECTIONAL CENTER; | ) | |
| WEXFORD HEALTH SOURCES, INC.; | ) | |
| DR. PARTHASARATHI GHOSH, MEDICAL | ) | |
| DIRECTOR OF STATEVILLE | ) | |
| CORRECTIONAL CENTER; DR. JOHN | ) | |
| GARDNER, MEDICAL DIRECTOR OF | ) | |
| PINCKNEYVILLE CORRECTIONAL CENTER; | ) | |
| DR. DARLENE CLARK; DENTAL | ) | |
| HYGIENIST JAIME SEARBY; UNKNOWN | ) | |
| CORRECTIONAL OFFICERS and UNKNOWN | ) | |
| MEDICAL PERSONNEL. | ) | |
| | ) | |
| Defendants. | ) | JURY TRIAL DEMANDED |

## AMENDED COMPLAINT

NOW COMES Plaintiff, JUAN NEELY, by and through his

attorneys, LOEVY & LOEVY, and complaining of Defendants, MICHAEL

P. RANDLE, FORMER DIRECTOR OF THE ILLINOIS DEPARTMENT OF

CORRECTIONS; GLADYSE C. TAYLOR, ACTING DIRECTOR OF THE ILLINOIS

DEPARTMENT OF CORRECTIONS; ROBERTA M. FEWS, DEPUTY DIRECTOR, ILLINOIS DPARTMENT OF CORRECTIONS OFFICE OF PROGRAMS AND SUPPORT SERVICES; MARCUS HARDY, WARDEN OF STATEVILLE CORRECTIONAL CENTER; ANTHONY RAMOS, FORMER WARDEN OF STATEVILLE CORRECTIONAL CENTER; DONALD GAETZ, WARDEN OF PINCKNEYVILLE CORRECTIONAL CENTER; RANDY DAVIS, FORMER WARDEN OF PINCKNEYVILLE CORRECTIONAL CENTER; WEXFORD HEALTH SOURCES, INC.; DR. PARTHASARATHI GHOSH, MEDICAL DIRECTOR OF STATEVILLE CORRECTIONAL CENTER NRC; DR. JOHN GARDNER, MEDICAL DIRECTOR OF PINCKNEYVILLE CORRECTIONAL CENTER; DR. DARLENE CLARK; DENTAL HYGIENIST JAIME SEARBY; UNKNOWN CORRECTIONAL OFFICERS and UNKNOWN MEDICAL PERSONNEL, sued in their individual and official capacities (collectively, "Defendants"), states as follows:

### Introduction

1.    This action is brought pursuant to 42 U.S.C. Section 1983 to redress the deprivation under color of law of Plaintiff's rights as secured by the United States Constitution.

### Jurisdiction and Venue

2.    This Court has jurisdiction of the action pursuant to 28 U.S.C. §§ 1331 and 1367.

3.    Venue is proper under 28 U.S.C. § 1391(b).  On information and belief, at least one Defendant resides in this

2

judicial district, and events giving rise to the claims asserted herein occurred within this district.

## The Parties

4.    Plaintiff Juan Neely is a thirty-seven year-old man from Chicago, Illinois.  He is currently incarcerated at Centralia Correctional Center.  At all times relevant to the events at issue in this case Plaintiff Neely was incarcerated at Pinckneyville and at Stateville Correctional Centers.

5.    At all times relevant to the events at issue in this case, Defendants Michael P. Randle and Gladyse C. Taylor were employed by the Illinois Department of Corrections ("IDOC") in the capacity of Directors of the IDOC.  As such, Defendants Randle and Taylor were acting under color of law.

6.    At all times relevant to the events at issue in this case, Defendants Randle and Taylor were responsible for the organization and supervision of all state-run correctional facilities in Illinois, including Pinckneyville Correctional Center ("Pinckneyville") and Stateville Correctional Center ("Stateville").

7.    Throughout their tenure as Directors of the IDOC, Defendants Randle and Taylor had personal knowledge of the deliberately indifferent provision of medical care challenged in

this case, and that such care was being imposed on inmates at Pinckneyville and at Stateville, and they implemented, enforced, and/or condoned these practices. Defendants Randle and Taylor are being sued in their official and individual capacities for the challenged provision of medical care.

8. At all times relevant to the events at issue in this case, Defendant Roberta M. Fews was employed by the Illinois Department of Corrections in the capacity of Deputy Director of the Office of Programs and Support Services. As such, Defendant Fews was acting under color of law.

9. At all times relevant to the events at issue in this case, Defendant Fews was responsible, through the Office of Health Services, for setting the standards for the delivery of inmate heath care and for evaluating the care provided to inmates throughout the IDOC, including at Stateville and at Pinckneyville.

10. Throughout her tenure as Deputy Director of the Office of Programs and Support Services, Defendant Fews had personal knowledge of the deliberately indifferent provision of medical care challenged in this case, and that such care was being imposed on inmates at Pinckneyville and at Stateville, and she implemented, enforced, and/or condoned these practices.

4

Defendant Fews is being sued in her official and individual capacities for the challenged provision of medical care.

11. At all times relevant to the events at issue in this case, Defendant Fews promulgated rules, regulations, policies, and procedures as Deputy Director of the Office of Programs and Support Services for the provision of certain medical care, including medical screening of, and the administration of medication to, inmates at Pinckneyville and at Stateville. Defendant Fews' policies were implemented by and through IDOC employees including certain individual Defendant medical care providers, who were responsible for the medical care of inmates at Pinckneyville and at Stateville, including Plaintiff.

12. At all times relevant to the events at issue in this case, Defendants Anthony Ramos and Marcus Hardy were employed by the Illinois Department of Corrections in the capacity of Wardens of Stateville Correctional Center. As such, Defendants Ramos and Hardy were acting under color of law.

13. At all times relevant to the events at issue in this case, Defendants Ramos and Hardy promulgated rules, regulations, policies, and procedures as Wardens of Stateville Correctional Center for the provision of certain medical care, including medical screening of inmates at Stateville and the

5

administration of medication to inmates at Stateville. Defendants Ramos and Hardy's policies were implemented by and through IDOC employees including certain individual Defendant medical care providers, who were responsible for the medical care of inmates at Stateville, including Plaintiff.

14. At all times relevant to the events at issue in this case, Defendants Donald Gaetz and Randy Davis were employed by the Illinois Department of Corrections in the capacity of Wardens of Pinckneyville Correctional Center. As such, Defendants Gaetz and Davis were acting under color of law.

15. At all times relevant to the events at issue in this case, Defendants Gaetz and Davis promulgated rules, regulations, policies, and procedures as Wardens of Pinckneyville Correctional Center for the provision of certain medical care, including medical screening of inmates at Pinckneyville and the administration of medication to inmates at Pinckneyville. Defendant Gaetz and Davis' policies were implemented by and through IDOC employees including certain individual Defendant medical care providers, who were responsible for the medical care of inmates at Pinckneyville, including Plaintiff.

16. At all times relevant to the events at issue in this case, Defendant Wexford Health Sources, Inc. ("Wexford") was

engaged in the business of providing medical and dental care and treatment to inmates, including Plaintiff, at Pinckneyville and at Stateville Correctional Centers, and had contracted with the IDOC to perform such services.  As such, Wexford was acting under color of law.

17.  At all times relevant to the events at issue in this case, in its capacity as a contractor to the IDOC, Wexford promulgated rules, regulations, policies, and procedures for the medical screening, medical treatment, and overall medical care of inmates at Pinckneyville and Stateville Correctional Centers, including Plaintiff.  Wexford policies were implemented by and through its employees and the employees of the IDOC, including the individual Defendant medical care providers and the individual Defendant correctional officers, who were responsible for the medical care of inmates at Pinckneyville and at Stateville.

18.  At all times relevant to the events at issue in this case, Defendant Dr. Ghosh and Defendant Unknown Medical Personnel were employed by Wexford or the IDOC to provide medical services to inmates, including Plaintiff, at Stateville. As such, Defendant Dr. Ghosh and Defendant Unknown Medical Personnel were acting under color of law.

7

19.  At all times relevant to the events at issue in this case, Defendant Dr. Ghosh was one of the treating physicians at Stateville and its Medical Director.  In his capacity as Medical Director, Dr. Ghosh promulgated rules, regulations, policies, and procedures for the medical screening, medical treatment, and overall medical care of inmates at Stateville Correctional Center, including Plaintiff.  Dr. Ghosh is being sued in his official and individual capacities.

20.  At all times relevant to the events at issue in this case, Defendant Dr. John Gardner, Defendant Dr. Darlene Clark, Defendant Dental Hygienist Jaime Searby, and other as-yet unknown medical personnel were employed by Wexford or the IDOC to provide medical services to inmates, including Plaintiff, at Pinckneyville.  As such, Defendant Dr. John Gardner, Defendant Dr. Darlene Clark, Defendant Dental Hygienist Jaime Searby, and as-yet unknown medical personnel were acting under color of law.

21.  At all times relevant to the events at issue in this case, Defendant Dr. Gardner was a dentist at Pinckneyville and its Medical Director.  In his capacity as Medical Director, Dr. Gardner promulgated rules, regulations, policies, and procedures for the medical screening, medical treatment, and overall medical care of inmates at Pinckneyville Correctional Center,

8

including Plaintiff.  Dr. Gardner is being sued in his official and individual capacities.

### Factual Allegations

22.  On or around April 5, 2010 Plaintiff reported to Defendant Dr. John Gardner and other as-yet unknown medical personnel at the Pinckneyville Medical Department that he was experiencing pain in one of his teeth and that he thought the tooth should be extracted.

23.  On information and belief, arrangements were subsequently made for the extraction of Plaintiff's tooth, but the extraction did not take place.

24.  On or around May 3, 2010 Plaintiff again reported to the Pinckneyville Medical Department complaining of the same painful tooth.  Defendant Dental Hygienist Jaime Searby told Plaintiff that she would schedule Plaintiff for a priority prophylactic cleaning.  Defendant Searby then told Plaintiff that he would have to pay a co-payment if he wanted to have the prophylactic cleaning done.

25.  Plaintiff explained to Defendants Searby and Gardner that they were mistaken and that Plaintiff did not have to make a co-payment for the cleaning to be done.

26. Defendants Searby and Gardner then had Plaintiff escorted out of the Medical Department without providing him with any treatment or scheduling his priority prophylactic cleaning.

27. Defendants Searby and Gardner then placed Plaintiff on the "off call" list so that Plaintiff could not return to the Medical Department even if Plaintiff felt he needed immediate medical attention.

28. Despite his painful tooth, Plaintiff was not allowed to return to the Medical Department for almost three months. When Plaintiff was finally allowed to return to the Medical Department, on information and belief, arrangements were again made for his tooth to be extracted.

29. Again, however, the tooth was not extracted, and instead, on or around August 12, 2010, Plaintiff was sent to Stateville Correctional Center on a state writ.

30. When Plaintiff arrived at Stateville he complained to as-yet unknown correctional officers and/or medical personnel that his tooth was causing him severe pain and that the gums around his tooth were bleeding and leaking a pus-like fluid.

31. The as-yet unknown correctional officer and/or medical personnel informed Plaintiff that it was Stateville policy not

to provide medical treatment to inmates on state writs and that Plaintiff would have to wait until he returned to Pinckneyville to have his medical issue resolved.

32. For four days Plaintiff complained to as-yet unknown medical personnel and to as-yet unknown corrections officers that his tooth was causing him severe pain and that the gums around his tooth were bleeding heavily. When Plaintiff was finally brought to the Medical Department he was diagnosed with a bleeding abscess and an infected tooth. Plaintiff was informed that his infected tooth needed to be removed.

33. Although Plaintiff was given a few days worth of antibiotics, he was denied any further medical treatment for the one month and a half that he remained at Stateville. During this period of time, Plaintiff was in a tremendous amount of pain. Plaintiff filed a number of emergency grievances that were received by Defendant Hardy and others, but to no avail. Instead, Plaintiff's constant pleas for help were ignored by Defendant Hardy and by other as-yet unknown medical personnel and corrections officers.

34. On or about September 29, 2010 Plaintiff returned to Pinckneyville Correctional Center, where for months he continued to experience extreme pain and distress relating to his severe

11

untreated dental condition. Defendants knew that Plaintiff had
a serious medical condition, yet they refused to provide him
with necessary medical attention. Plaintiff filed a number of
emergency grievances that were received by Defendant Davis and
others, but to no avail. Again, Plaintiff's pleas for help were
ignored by Defendants Davis, Clark, Gardner, Searby, and by
other as-yet unknown medical personnel and corrections officers.

**Legal Claims**

35. Each paragraph of this Complaint is incorporated as if
restated fully herein.

36. As described more fully above, Defendants had notice
of Plaintiff's medical need and of the seriousness of his
medical need, and yet, they refused to provide him with
necessary medical attention, in violation of the Eighth
Amendment to the Constitution.

37. The conduct of Defendants was objectively unreasonable
and was undertaken intentionally with malice, willfulness, and
reckless indifference to the rights of others.

38. Alternatively, Defendants were deliberately
indifferent to Plaintiff's objectively serious medical needs,
and their acts were undertaken with malice, willfulness, and
deliberate indifference to the rights of others.

12

39.   At all times relevant to the events at issue in this case, Defendants Randle and Taylor, as Directors of IDOC, were responsible for the creation, implementation, oversight, and supervision of all policies and procedures followed by IDOC employees, including medical technicians and correctional officers at Pinckneyville and Stateville Correctional Centers.

40.   Plaintiff's injuries were directly and proximately caused by the policies and practices of Defendants Randle and Taylor.

41.   At all times relevant to the events at issue in this case, Defendants Randle and Taylor had notice of a widespread practice by IDOC employees at Pinckneyville and at Stateville under which inmates with serious medical conditions, such as Plaintiff, were routinely denied access to proper or sufficient medication and medical care.

42.   Defendant Randle and Taylor's policies and procedures resulted in the frequent failure and refusal of Pinckneyville and Stateville employees to provide proper or adequate medication and medical care to inmates, like Plaintiff, whom they knew to have serious medical conditions.

43.   Defendants Randle and Taylor had a constitutional obligation to maintain and provide continuing adequate and

13

appropriate medical evaluation and medical care and treatment of inmates incarcerated at Pinckneyville and at Stateville.

44.    As a proximate result of the unconstitutional policies and procedures of Defendants Randle and Taylor, as set forth herein, Plaintiff was deprived of his rights under the Eighth Amendment to the United States Constitution.

45.    At all times relevant to the events at issue in this case, Defendant Fews, as Deputy Director of IDOC's Office of Programs and Special Services, was responsible for the creation, implementation, oversight, and supervision of all policies and procedures followed by IDOC employees, including medical technicians and correctional officers at Pinckneyville and Stateville Correctional Centers.

46.    Plaintiff's injuries were directly and proximately caused by the policies and practices of Defendant Fews.

47.    At all times relevant to the events at issue in this case, Defendant Fews had notice of a widespread practice by IDOC employees at Pinckneyville and at Stateville under which inmates with serious medical conditions, such as Plaintiff, were routinely denied access to proper or sufficient medication and medical care.

14

48. Defendant Fews' policies and procedures resulted in the frequent failure and refusal of Pinckneyville and Stateville employees to provide proper or adequate medication and medical care to inmates, like Plaintiff, whom they knew to have serious medical conditions.

49. Defendant Fews had a constitutional obligation to maintain and provide continuing adequate and appropriate medical evaluation and medical care and treatment of inmates incarcerated at Pinckneyville and at Stateville.

50. As a proximate result of the unconstitutional policies and procedures of Defendant Fews, as set forth herein, Plaintiff was deprived of his rights under the Eighth Amendment to the United States Constitution.

51. At all times relevant to the events at issue in this case, Defendants Hardy and Ramos, as Wardens of Stateville, were responsible for the creation, implementation, oversight, and supervision of all policies and procedures followed by IDOC employees, including medical technicians and correctional officers at Stateville Correctional Center.

52. Plaintiff's injuries were directly and proximately caused by the policies and practices of Defendants Hardy and Ramos.

53.  At all times relevant to the events at issue in this case, Defendants Hardy and Ramos had notice of a widespread practice by IDOC employees at Stateville under which inmates with serious medical conditions, such as Plaintiff, were routinely denied access to proper or sufficient medication and medical care.

54.  Defendants Hardy and Ramos' policies and procedures resulted in the frequent failure and refusal of Stateville employees to provide proper or adequate medication and medical care to inmates, like Plaintiff, whom they knew to have serious medical conditions.

55.  Defendants Hardy and Ramos had a constitutional obligation to maintain and provide continuing adequate and appropriate medical evaluation and medical care and treatment of inmates incarcerated at Stateville.

56.  As a proximate result of the unconstitutional policies and procedures of Defendants Hardy and Ramos, as set forth herein, Plaintiff was deprived of his rights under the Eighth Amendment to the United States Constitution.

57.  At all times relevant to the events at issue in this case, Defendants Gaetz and Davis, as Wardens of Pinckneyville, were responsible for the creation, implementation, oversight,

16

and supervision of all policies and procedures followed by IDOC employees, including medical technicians and correctional officers at Pinckneyville Correctional Center.

58. Plaintiff's injuries were directly and proximately caused by the policies and practices of Defendants Gaetz and Davis.

59. At all times relevant to the events at issue in this case, Defendants Gaetz and Davis had notice of a widespread practice by IDOC employees at Pinckneyville under which inmates with serious medical conditions, such as Plaintiff, were routinely denied access to proper or sufficient medication and medical care.

60. Defendants Gaetz and Davis' policies and procedures resulted in the frequent failure and refusal of Pinckneyville employees to provide proper or adequate medication and medical care to inmates, like Plaintiff, whom they knew to have serious medical conditions.

61. Defendants Gaetz and Davis had a constitutional obligation to maintain and provide continuing adequate and appropriate medical evaluation and medical care and treatment of inmates incarcerated at Pinckneyville.

62. As a proximate result of the unconstitutional policies and procedures of Defendants Gaetz and Davis, as set forth herein, Plaintiff was deprived of his rights under the Eighth Amendment to the United States Constitution.

63. At all times relevant to the events at issue in this case, Defendant Wexford Health Sources, Inc. was under contract to the State of Illinois, through the Illinois Department of Corrections, to provide health care to inmates at Pinckneyville and Stateville Correctional Centers, including Plaintiff. In such capacity, Defendant Wexford acted under color of law, and Wexford, as provider of healthcare services to inmates at Pinckneyville and at Stateville, was responsible for the creation, implementation, oversight, and supervision of all policies and procedures followed by Wexford and IDOC employees who were medical care providers to inmates incarcerated at Pinckneyville and at Stateville Correctional Centers.

64. Plaintiff's injuries were directly and proximately caused by the policies and practices of Defendant Wexford Health Sources.

65. At all times relevant to the events at issue in this case, Wexford maintained a policy or procedure under which inmates with serious medical conditions, like Plaintiff, were

18

routinely denied access to proper or sufficient medical care.

66.  Wexford's policies and procedures resulted in the frequent failure and refusal of its employees to provide proper or adequate medication and medical care to inmates, like Plaintiff, whom they knew to have serious medical conditions.

67.  Wexford had a constitutional obligation to maintain and provide continuing adequate and appropriate medical evaluation and medical care and treatment of prisoners incarcerated at Pinckneyville and at Stateville Correctional Centers.

68.  As a direct and proximate result of the unconstitutional policies and procedures of Wexford, as set forth herein, Plaintiff was deprived of his rights under the Eighth Amendment to the United States Constitution.

69.  At all times relevant to the events at issue in this case, Defendant Dr. Gardner, as Medical Director of Pinckneyville, was responsible for the creation, implementation, oversight, and supervision of all medical policies and procedures followed by IDOC and Wexford employees at Pinckneyville, including medical personnel and correctional officers.

70. Plaintiff's injuries were directly and proximately caused by the policies and practices of Defendant Dr. Gardner.

71. At all times relevant to the events at issue in this case, Defendant Dr. Gardner had notice of a widespread practice by IDOC and Wexford employees at Pinckneyville under which inmates with serious medical conditions, such as Plaintiff, were routinely denied access to proper or sufficient medication and medical care.

72. Defendant Dr. Gardner's policies and procedures resulted in the frequent failure and refusal of Pinckneyville employees to provide proper or adequate medication and medical care to inmates, like Plaintiff, whom they knew to have serious medical conditions.

73. Defendant Dr. Gardner had a constitutional obligation to maintain and provide continuing adequate and appropriate medical evaluation and medical care and treatment of inmates incarcerated at Pinckneyville Correctional Center.

74. As a proximate result of the unconstitutional policies and procedures of Defendant Dr. Gardner, as set forth herein, Plaintiff was deprived of his rights under the Eighth Amendment to the United States Constitution.

20

75.  At all times relevant to the events at issue in this case, Defendant Dr. Ghosh, as Medical Director of Stateville, was responsible for the creation, implementation, oversight, and supervision of all medical policies and procedures followed by IDOC and Wexford employees at Stateville, including medical personnel and correctional officers.

76.  Plaintiff's injuries were directly and proximately caused by the policies and practices of Defendant Dr. Ghosh.

77.  At all times relevant to the events at issue in this case, Defendant Dr. Ghosh had notice of a widespread practice by IDOC and Wexford employees at Stateville under which inmates with serious medical conditions, such as Plaintiff, were routinely denied access to proper or sufficient medication and medical care.

78.  Defendant Dr. Ghosh's policies and procedures resulted in the frequent failure and refusal of Stateville employees to provide proper or adequate medication and medical care to inmates, like Plaintiff, whom they knew to have serious medical conditions.

79.  Defendant Dr. Ghosh had a constitutional obligation to maintain and provide continuing adequate and appropriate medical evaluation and medical care and treatment of inmates

incarcerated at Stateville Correctional Center.

80. As a proximate result of the unconstitutional policies and procedures of Defendant Dr. Ghosh, as set forth herein, Plaintiff was deprived of his rights under the Eighth Amendment to the United States Constitution.

81. At all times relevant to the events at issue in this case, Defendant Dr. Ghosh, Defendant Dr. Gardner, Defendant Dr. Clark, Defendant Dental Hygienist Searby, and Defendant Unknown Medical Personnel, were agents of Wexford Health Sources, Inc. As such, in committing the acts alleged in the preceding paragraphs, Defendant Dr. Ghosh, Defendant Dr. Gardner, Defendant Dr. Clark, Defendant Dental Hygienist Searby, and Defendant Unknown Medical Personnel, were acting at all relevant times within the scope of their employment. Defendant Wexford is a principal liable for all torts committed by its agents.

82. At all times relevant to the events at issue in this case, Defendant Randle, Defendant Taylor, Defendant Fews, Defendant Ramos, Defendant Hardy, Defendant Gaetz, Defendant Davis, and Defendant Unknown Correctional Officers, acted within the scope of their employment. As such, the State of Illinois is therefore liable as their employer for any resulting damages and award of attorneys' fees.

WHEREFORE, Plaintiff, JUAN NEELY, by and through his attorneys, LOEVY & LOEVY, respectfully requests that this Court enter judgment in his favor and against Defendants MICHAEL P. RANDLE, FORMER DIRECTOR OF THE ILLINOIS DEPARTMENT OF CORRECTIONS; GLADYSE C. TAYLOR, ACTING DIRECTOR OF THE ILLINOIS DEPARTMENT OF CORRECTIONS; ROBERTA M. FEWS, DEPUTY DIRECTOR, ILLINOIS DPARTMENT OF CORRECTIONS OFFICE OF PROGRAMS AND SUPPORT SERVICES; MARCUS HARDY, WARDEN OF STATEVILLE CORRECTIONAL CENTER; ANTHONY RAMOS, FORMER WARDEN OF STATEVILLE CORRECTIONAL CENTER; DONALD GAETZ, WARDEN OF PINCKNEYVILLE CORRECTIONAL CENTER; RANDY DAVIS, FORMER WARDEN OF PINCKNEYVILLE CORRECTIONAL CENTER; WEXFORD HEALTH SOURCES, INC.; DR. PARTHASARATHI GHOSH, MEDICAL DIRECTOR OF STATEVILLE CORRECTIONAL CENTER NRC; DR. JOHN GARDNER, MEDICAL DIRECTOR OF PINCKNEYVILLE CORRECTIONAL CENTER; DR. DARLENE CLARK; DENTAL HYGIENIST JAIME SEARBY; UNKNOWN CORRECTIONAL OFFICERS and UNKNOWN MEDICAL PERSONNEL, awarding compensatory damages, punitive damages, attorneys' fees, and any other relief this Court deems appropriate.

**JURY DEMAND**

Plaintiff, JUAN NEELY, by and through his attorneys, LOEVY

& LOEVY, hereby demands a trial by jury pursuant to Federal Rule

of Civil Procedure 38(b) on all issues so triable.


RESPECTFULLY SUBMITTED,


  /s/ Vincenzo Field
Attorneys for Plaintiff

Arthur Loevy
Michael Kanovitz
Jon Loevy
Elizabeth Mazur
Vincenzo Field
LOEVY & LOEVY
312 North May St., Ste. 100
Chicago, IL 60607
(312) 243-5900