IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| JUAN NEELY, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| vs. | ) Case No. 12 C 2231 |
| | ) |
| MICHAEL P. RANDLE, et al., | ) |
| | ) |
| Defendants. | ) |

## MEMORANDUM OPINION AND ORDER

MATTHEW F. KENNELLY, District Judge:

Juan Neely has asserted claims against Illinois Department of Corrections (IDOC) employees, Wexford Health Sources, Inc., and Wexford Health Sources employees pursuant to 42 U.S.C. § 1983. Neely's complaint also names as defendants unknown correctional officers and medical personnel. Currently before the Court are motions by the IDOC and Wexford defendants to dismiss all of Neely's claims. For the reasons stated below, the Court grants defendants' motions in part and denies them in part.

### Facts

The Court draws the following facts from Neely's complaint and accepts them as true for purposes of the motions to dismiss. *Hallinan v. Fraternal Order of Police of Chi. Lodge No. 7*, 570 F. 3d 811, 820 (7th Cir. 2009).

Neely is an IDOC prisoner currently serving his sentence at Centralia Correctional Center. He states that on April 5, 2010, while at Pinckneyville

Correctional Center, he began complaining about pain in one of his teeth. Neely alleges that he complained again on May 3, 2010 and was not only denied treatment but also placed on the "off call" list so that he could not return to the prison's medical department. On July 29, 2010, Neely was allowed to return to the medical department where an examination revealed a swollen, painful cheek and a likely abscessed tooth. Neely says that he was told he needed to go to the dental department for treatment. He alleges, however, that no referral was made.

Between August 11 and September 29, 2010, Neely was transferred from to Stateville Correctional Center on a writ and then back to Pinckneyville. Neely says that pursuant to IDOC policies and procedures regarding the transfer of inmates, Pinckneyville and Stateville medical personnel examined him before leaving and upon arriving at each prison. He alleges he complained of his tooth pain but that medical personnel failed to note any of his complaints in his "offender health status transfer summary," contrary to IDOC policy.

Neely claims that once at Stateville, he was told it was "Stateville policy not to provide medical treatment to inmates on state writs and that Plaintiff would have to wait until he returned to Pinckneyville to have his medical issue resolved." 2d Am. Compl. ¶ 38. During his stay at Stateville, Neely alleges, he complained to unknown medical personnel and correctional officers regarding his tooth pain and heavily bleeding gums. He says that he was brought to the medical department at Stateville and was told that his infected tooth needed to be removed. Despite this, Neely contends, he was denied further treatment

while at Stateville other than being given a few days' worth of antibiotics. Neely also alleges that at Pinckneyville a number of months later, before he was transferred to an outside institution for medical care, he was examined by medical personnel who also failed to document his serious medical condition on his offender health status transfer summary.

Neely claims that during the relevant time frame, he filed a number of grievances that were ignored by IDOC employees. He alleges that he suffered severe pain and distress for months and that the defendants knowingly denied him necessary medical attention.

## Discussion

Defendants have moved to dismiss Neely's second amended complaint pursuant to Federal Rule of Civil Procedure 12(b)(6). All of the defendants argue that Neely's allegations do not reflect the personal involvement or deliberate indifference required for liability under section 1983. The IDOC defendants also contend that the Eleventh Amendment bars Neely's official capacity claims. The Wexford defendants contend that Neely did not exhaust administrative remedies with regard to his claims against them. Various defendants also argue that Neely has failed to adequately alleged a policy or practice actionable under *Monell*.

On a motion to dismiss under Rule 12(b)(6), the Court accepts the facts stated in the complaint as true and draws reasonable inferences in favor of the plaintiff. *Hallinan*, 570 F.3d at 820. To survive a motion to dismiss, a complaint must include enough facts to state a claim for relief that is plausible on its face. *Ashcroft v. Iqbal*, 556 U.S. 662, 663 (2009). A claim is plausible on its face

"when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.*

I.  **Exhaustion of remedies**

The Prison Litigation Reform Act of 1996 provides that "[n]o action shall be brought with respect to prison conditions . . . by a prisoner . . . until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997(e)(a). "[I]f a prison has an internal administrative grievance system through which a prisoner can seek to correct a problem, then the prisoner must utilize that administrative system before filing a claim" under section 1983. *Massey v. Helman*, 196 F.3d 727, 733 (7th Cir. 1999).

The Wexford defendants argue that Neely failed to exhaust administrative remedies with regard to his claims against them. As a general rule, an inmate must comply with the rules established by the state with respect to the form and timeliness of grievances. *E.g., Pozo v. McCaughtry,* 286 F.3d 1022, 1023–25 (7th Cir. 2002). In this case, unlike in *Pozo*, Neely alleges that he received no response to a number of his grievances. The Seventh Circuit has held that prison officials' failure to respond to an inmate's grievances renders administrative remedies "unavailable" and excuses the prisoner from pursuing them further. *Lewis v. Washington,* 300 F.3d 829, 833 (7th Cir. 2002).

All of that aside, "failure to exhaust is an affirmative defense under PLRA, and inmates are not required to specially plead or demonstrate exhaustion in their complaints." *Jones v. Bock*, 549 U.S. 199, 216 (2007). *See also Dole v. Chandler*, 438 F.3d 804, 809 (7th Cir. 2006) ("Exhaustion is an affirmative

4

defense, and the burden of proof is on the defendants."). "[A] district court should not base a dismissal under Rule 12(b)(6) on its assessment of an affirmative defense," see U.S. Gypsum Co. v. Indiana Gas Co., 350 F.3d 623, 626 (7th Cir. 2003), unless the plaintiff "has included in its complaint facts that establish an impenetrable defense to its claims" and thus essentially pleads himself out of court. Hecker v. Deere & Co., 556 F.3d 575, 588 (7th Cir. 2009). Neely alleges that he filed grievances that were received and ignored by various defendants. He has not pleaded himself out of court. The exhaustion defense does not provide a basis for dismissal under Rule 12(b)(6).

II.     **Personal involvement / deliberate indifference**

Both IDOC and individual Wexford defendants argue that Neely has insufficiently alleged the personal involvement and deliberate indifference required for liability under section 1983. "Section 1983 creates a cause of action based on personal liability and predicated upon fault; thus liability does not attach unless the individual defendant caused or participated in a constitutional deprivation." Vance v. Washington, 97 F.3d 987, 991 (7th Cir. 1996). This ultimately will require Neely to demonstrate that the particular defendant under consideration was personally involved in the particular deprivation alleged or that the deprivation occurred at the defendant's direction or with the defendant's knowledge and consent. See Gentry v. Duckworth, 65 F.3d 555, 561 (7th Cir. 1995). Liability under the Eighth Amendment in these circumstances requires proof that the prison official was deliberately indifferent to the inmate's serious medical need. Farmer v. Brennan, 511 U.S. 825, 837 (1994); Estelle v. Gamble,

429 U.S. 9, 103-104 (1976); *Sherrod v. Lingle*, 223 F.3d 605, 610 (7th Cir. 2000). Deliberate indifference has both an objective and subjective element: the inmate must have an objectively serious medical condition, and the official must be subjectively aware of and consciously disregard a risk to the inmate's health or safety. *Farmer*, 511 U.S. at 837; *Sherrod*, 223 F.3d at 610.

### A. IDOC Directors and prison wardens (Randle, Taylor, Ramos, Hardy, Gaetz and Davis)

Randle and Taylor were each Director of the IDOC at relevant times. Neely alleges that Randle and Taylor were responsible for the "organization and supervision of all state-run correctional facilities in Illinois" and that they were responsible for providing medical services to inmates. 2d Am. Compl. ¶¶ 6-7. Neely also alleges that Randle and Taylor "had personal knowledge of the deliberately indifferent provisions of medical care challenged in this case," that "such care was being imposed on inmates at Pinckneyville and Stateville," and that they condoned these practices. *Id.* ¶ 7.

Neely alleges that defendants Ramos and Hardy (Stateville wardens) and Gaetz and Davis (Pinckneyville wardens) were responsible for providing medical care to inmates and for supervising correctional and medical personnel at their respective correctional centers. *See* 2d Am. Compl. ¶¶ 12, 14, 15 & 17. Neely alleges that he filed a number of emergency grievances that were received by certain of the wardens, putting them on notice of his condition and need for treatment, but that they did not take action. *Id.* ¶¶ 40 & 43.

The Seventh Circuit has stated that "[f]or the purposes of a motion to dismiss, a warden cannot be assumed to be directly involved in the prison's day-

6

to-day operations." *Steidl v. Gramley*, 151 F.3d 739, 741-42 (7th Cir. 1998) ("It is simply the uniform application of a rule of construction: an inference that a warden is directly involved in a prison's daily operations is not reasonable."). A prison warden is "entitled to relegate to the prison's medical staff the provision of good medical care." *Burks v. Raemisch,* 555 F.3d 592, 595 (7th Cir. 2009). If there is "no personal involvement by the warden [in an inmate's medical care] outside the grievance process," that is insufficient to state a claim against the warden. *Gevas v. Mitchell*, 492 Fed. Appx. 654, 660 (7th Cir. 2012). Neely alleges no actual involvement by the wardens in his medical care other than by dealing with, or allegedly ignoring, his grievances. This is insufficient to state a claim against them.

Neely's allegations that the wardens supervised medical and correctional personnel are not enough to tip the balance in his favor. The Seventh Circuit has made it clear not only that a warden is generally entitled to delegate medical care to medical staff, but also that "[l]iability depends on each defendant's knowledge and actions, not on the knowledge and actions of persons they supervise." *Burks*, 555 F.3d at 594. Neely does not allege that the wardens were aware (other than via grievances) of conduct by medical or correctional personnel that was directed toward him.

The same is true of Neely's claims against Randle and Taylor, who were directors of the IDOC during relevant periods. Neely has not plausibly alleged that either Randle or Taylor was subjectively aware of his medical condition or consciously disregarded a risk to his health. Although Neely alleges that Taylor

7

received a number of the emergency grievances that he filed,[1] as with the wardens, this is not enough to amount to the requisite personal involvement.

For these reasons, the Court dismisses Neely's individual-capacity claims against the warden and IDOC director defendants, except for his *Monell* claims against those defendants, which the Court will address below.

### B. Stateville medical director (Dr. Mahon)

Neely originally sued Dr. Parthasarathi Ghosh, who was medical director at Stateville, but he recently substituted Dr. Sylvia Mahon after learning that she was the medical director during the relevant period. It is unclear from Neely's complaint whether he asserts a claim against Dr. Mahon on any basis other than *Monell*. If that is Neely's intention, he has failed to state a claim against Dr. Mahon (the Court will address the *Monell* issue later).

Neely alleges that Dr. Mahon, in addition to being a treating doctor, had the overall responsibility for providing medical service to inmates, including Neely. *See* 2d Am. Compl. ¶ 26. Neely does not allege, however, that he ever dealt with or spoke to Dr. Mahon or that she received any of his grievances. Nor does Neely provide any allegation that Dr. Mahon was aware of his condition or treatment. His allegation that Dr. Mahon, as medical director, had overall responsibility for medical care at Stateville is insufficient without more to amount to a plausible allegation of her personal involvement, let alone conscious disregard of a risk to Neely's health. Neely has failed to state a claim against Dr.

---

[1] It is unclear from the second amended complaint whether Neely contends that his grievances were received by the Taylor who is identified as IDOC Director or by the Taylor who is identified as a Wexford CMT. To the extent Neely intends to refer to Taylor the IDOC Director, this analysis applies.

Mahon in his current complaint (again, other than a *Monell* claim, which the Court will address shortly).

### C. Medical / dental staff (Dr. Gardener, Dr. Mitchell, dental hygienist Searby, CMT Taylor, RN Collins, RPN Rector, LPN Harmon, and Ms. Lanek)

Neely sufficiently alleges personal involvement and deliberate indifference with regard to defendants Gardener, Mitchell, Searby, Taylor, Collins, Rector, Harmon, and Lanek, all of whom are medical staff personnel who dealt with him at the prisons. "[K]nowledge and intent … need not be covered in detail; Fed. R. Civ. P. 9(b) provides that '[m]alice, intent, knowledge, and other conditions of a person's mind may be alleged generally.'" *Burks*, 555 F.3d at 594. "A prisoner's statement that he repeatedly alerted medical personnel to a serious medical condition, that they did nothing in response, and that permanent injury ensued, is enough to state a claim on which relief may be granted-if it names the persons responsible for the problem." *Id.*; *see also McGowan v. Hulick,* 612 F.3d 636, 640 (7th Cir. 2010) (delays in referring inmate to dentist or oral surgeon over the course of several months while inmate continued to suffer significant pain and his condition deteriorated was sufficient to state a claim of deliberate indifference); *Boyd v. Knox,* 47 F.3d 966 (8th Cir. 1995) (delay of care coupled with knowledge of inmate's suffering, especially after observing inmate's swollen and infected mouth, could support a finding of an Eighth Amendment violation).

This is, in essence, what Neely has alleged with regard to the medical staff defendants. His complaint sets out allegations that he was seen or treated by each of these defendants over the course of several months and that each of

9

them consciously disregarded his serious medical condition, failed to provide adequate care, and failed to document his dental condition and related pain. Although defendants contend that they were unaware that Neely suffered an objectively serious medical condition or that he did not present objective complaints to them, these contentions involve factual issues that are not appropriately addressed on a motion to dismiss for failure to state a claim. Finally, though defendants point to Neely's allegations indicating that he received some medical attention, this does not defeat his claim. Deliberate indifference to a serious medical need can be manifested by "woefully inadequate action" as well as by inaction. *See, e.g., Reed v. McBride,* 178 F.3d 849, 854 (7th Cir. 1999).

For these reasons, the Court declines to dismiss Neely's individual-capacity claims against the medical staff defendants.

### III. *Monell* and official capacity claims

Neely concedes that Wexford Health Sources, Inc. cannot be held vicariously liable under a *respondeat superior* theory of liability. *See* Pl.'s Consol. Resp. to Defs.' Mot. to Dismiss at 11 n.2. He also concedes that the Eleventh Amendment bars his claims against the IDOC defendants in their official capacities. *See id.* at 2 n.1.

Neely also alleges, however, that defendants Randle and Taylor (both IDOC directors), Hardy and Ramos (Stateville wardens), Gaetz and Davis (Pinckneyville wardens), Wexford Health Services, and Drs. Gardner and Mahon (medical directors of Pinckneyville and Stateville) are liable under *Monell v. Dep't*

*of Soc. Servs. of City of New York*, 436 U.S. 658 (1978).  Neely alleges that these defendants established, maintained, and condoned policies and practices that caused the alleged deprivation of his constitutional rights.  *See* 2d Am. Compl. ¶¶ 49-90.

An official policy, custom, or practice is actionable under *Monell* in three types of situations:  where there is an express policy that, when enforced, causes a constitutional deprivation; a widespread practice that, although not expressly authorized by law or policy, is so settled that it constitutes a "custom or usage" that effectively has the force of law; or causation of the plaintiff's constitutional injury by a person with final policy-making authority.  *See, e.g., Garrison v. Burke,* 165 F.3d 565, 571-72 (7th Cir. 1999); *see also, Perkins v. Lawson,* 312 F.3d 872, 875 (7th Cir. 2002); *Brokaw v. Mercer County,* 235 F.3d 1000, 1013 (7th Cir. 2000).  In his second amended complaint, Neely alleges that his injuries and the alleged violations of his constitutional right to adequate medical care were directly and proximately caused by the policies and widespread practices regarding medical treatment that these defendants established or of which they were aware and deliberately indifferent.

Neely has included sufficient "factual content to nudge his claim . . . across the line from conceivable to plausible." *McCauley v. City of Chicago*, 671 F.3d 611, 618 (7th Cir. 2011) (internal quotation marks omitted).  In particular, his allegations of routine delays and denials of medical care and non-responsiveness to requests for care, combined with the more specific factual allegations regarding how he was dealt with at the two institutions, are sufficient

to state claims under *Monell* and to put the defendants on notice of what he is alleging. Defendants are not entitled to dismissal on this basis.

IV. **Qualified immunity**

The individual Wexford defendants also argue that they are entitled to dismissal based on the doctrine of qualified immunity. They contend that Neely has not sufficiently alleged that their violated any clearly established constitutional rights. To assess a claim of qualified immunity, the Court determines, first, whether the plaintiff has alleged the deprivation of an actual constitutional right, and second, whether the right was clearly established at the time of the violation. *See, e.g., Wilson v. Layne,* 526 U.S. 603, 609 (1999); *Doyle v. Camelot Care Ctrs., Inc.,* 305 F.3d 603, 616. The "right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right." *Anderson v. Creighton,* 483 U.S. 635, 640 (1987).

The Court cannot conclude from the face of the complaint that the alleged deprivations of medical care that Neely describes were insufficiently serious to give rise to a viable Eighth Amendment claim. To put it another way, Neely has asserted a facially plausible claim for violation of his Eighth Amendment right against cruel and unusual punishment, given his allegations that he was denied proper medical care over the course of at least six months for a highly painful condition that medical professionals had diagnosed as requiring further treatment. And it is beyond question that the right at issue was clearly established long before the events that Neely has described.

It is conceivable that some of the defendants may be able to demonstrate at the summary judgment stage they are entitled to qualified immunity. At the current juncture, however, their arguments fail. As the Seventh Circuit has stated, qualified immunity is "almost always a bad ground for dismissal" under Rule 12(b)(6). *See Jacobs v. City of Chicago,* 215 F.3d 758, 765 n. 3 (7th Cir. 2000); *id.* at 775 (Easterbrook, J., concurring). A plaintiff is not required to plead around an anticipated qualified immunity defense. *See Gomez v. Toledo,* 446 U.S. 635, 639–40 (1980). To put it another way, Neely is not required to prove the absence of qualified immunity in his complaint. At this stage the question is whether, taking the complaint's factual allegations in the light most favorable to Neely, there is a plausible basis for a claim that would overcome a qualified immunity defense. The answer to that question is yes. If, as Neely alleges, the Wexford defendants were aware of his ongoing serious dental condition and ignored him or put him off as he alleges, they would not be entitled to qualified immunity. As the Court has indicated, even if some defendants may have taken some action to treat Neely and deal with his complaints, a defendant may still be liable under section 1983 if he takes woefully inadequate action. *See, e.g., Reed*, 178 F.3d at 854.

## Conclusion

For the reasons stated above, the Court grants defendants' motions to dismiss in part and denies them in part. The Court dismisses plaintiff's official capacity claims against the IDOC defendants and his *respondeat superior* claim against Wexford Health Sources, Inc. The Court also dismisses plaintiff's claims

against defendants Randle, Taylor, Ramos, Hardy, Gaetz, Davis, and Mahon, except to the extent he seeks to hold them liable under a *Monell* theory. The Court otherwise denies defendants' motions. Defendants are directed to answer the complaint by no later than July 18, 2013.

_____
MATTHEW F. KENNELLY
United States District Judge

Date: June 29, 2013